## IN THE UNITED STATES DISTRICT COURT OF KANSAS

| | |
|---|---|
| **KATE UMPHREY**, ) | |
| Plaintiff, ) | |
| v. ) | **Case No.:** |
| ) | |
| **MOVEMENT MORTAGE, LLC.** ) | |
| Serve Registered Agent: ) | |
| Corporation Service Company ) | |
| 2900 SW Wanamaker Drive Suite 204 ) | |
| Topeka, KS 66614 ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW Plaintiff Kate Umphrey ("Plaintiff"), by and through the undersigned counsel, and states and alleges as follows for her Complaint against the above-named Defendant:

## NATURE OF THE CASE

1. Plaintiff, while an employee of Defendant Movement Mortgage, LLC ("Movement Mortgage") was subjected to unlawful discrimination based on her status as an individual with a disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et. seq.*

2. Plaintiff seeks all relief available under the ADA, including but not limited to, back pay and front pay, reinstatement, compensatory and punitive damages, costs, and reasonable attorneys' fees.

3. Plaintiff seeks all relief available to redress the deprivation of Plaintiff's civil rights pursuant to 29 U.S.C. § 623 *et seq.* (The Age Discrimination in Employment Act ("ADEA")).

## PARTIES

4. Plaintiff is a Kansas citizen residing in Olathe, Johnson County, Kansas, and is 62 years old.

5. Plaintiff is a "qualified individual" under the ADA, specifically 42 U.S.C. §12111(8), because Plaintiff suffers from a disability but can perform the essential functions of her job with or without reasonable accommodation.

6. Defendant Movement Mortgage, LLC is an entity organized in Delaware and doing business in Kansas at 13651 South Mur-Len Road, Olathe, KS 66062.

7. Movement Mortgage, is an "employer" for purposes of the ADA and as defined in 42 U.S.C. § 12111(5)(A) because it employs more than 15 people each day.

8. Movement Mortgage is an entity and thus incapable of acting on its own behalf and therefore acts through agents. It is liable for the conduct of its agents, including but not limited to the individuals named herein, acting within the course and scope of their agency, its own negligence, the acts of its agents which it ratifies, injuries incurred by agents' performance of its non-delegable duties, and acts its agents take by virtue of their agency or employment with Movement Mortgage.

## JURISDICTION AND VENUE

9. Plaintiff submits to this Court's jurisdiction for the adjudication of her Complaint.

10. This Court has personal jurisdiction over Movement Mortgage in that at all relevant times, Movement Mortgage transacted business in the State of Kansas and committed the acts and omissions alleged herein in the State of Kansas within this District, and otherwise has a continuous and systematic presence in this District.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Plaintiff's claims arise under federal law and involve a substantial federal question.

12. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District Court's territorial jurisdiction.

## ADMINISTRATIVE PROCEEDINGS

13. On or about May 30, 2019, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission. The Charge Number is 563-2019-02135. A copy is attached hereto as **Exhibit A and is incorporated herein by reference.**

14. On November 26, 2019, the Equal Employment Opportunity Commission issued to Plaintiff a Notice of Right to Sue. A copy is attached hereto as **Exhibit B and is incorporated herein by reference**.

15. This action has been filed within ninety days after November 26, 2019.

## FACTUAL ALLEGATIONS

16. Plaintiff was hired by Movement Mortgage in approximately September of 2016.

17. Defendant Movement Mortgage is mortgage bank with over 650 locations throughout 47 states.

18. Plaintiff was originally hired as a Transition Coordinator at Movement Mortgage's Olathe, Kansas location.

19. In approximately October of 2016, Plaintiff was promoted to the position of Loan Officer 's Assistant ("LOA") upon becoming licensed as a loan originator.

20. Plaintiff was a high-performing employee and was qualified for the position she held.

21. In her role as a Loan Officer's Assistant, Plaintiff's ability to succeed and her income level were tied directly to her ability to work with Loan Officers who were closing loans.

22. Plaintiff received a base salary, but a large part of her income consisted of commissions she received on the loans she helped close.

23. When Plaintiff first became a Loan Officer's Assistant, she was assigned to help close loans for Angie Bates, a high-originating loan officer.

24. Plaintiff worked side-by-side with Ms. Bates for approximately eight months, and worked closely with Ms. Bates to close a large number of loans.

25. During this time period, Ms. Bates never expressed to Plaintiff that she was concerned about Plaintiff's ability to do her job, nor did she ever complain that she was dissatisfied with Plaintiff's performance.

26. In approximately March of 2017, Defendant hired Kyle Morrissey as a Loan Officer, and Plaintiff was assigned to work as Mr. Morrissey's Loan Officer's Assistant. This was in addition to her LOA responsibilities with Ms. Bates.

27. Plaintiff succeeded in performing LOA duties for both Ms. Bates and Mr. Morrissey, and never received any feedback indicating that her performance was not meeting standards.

28. In fact, in approximately July or August of 2017, Ms. Bates specifically commended Plaintiff on her impressive work ethic, and made a specific comment about Plaintiff's strong work ethic to Regional Manager Paul Sinnett during a visit Sinnett made to Defendant's Olathe, Kansas office.

29. During the last quarter of 2017, Kristen Seele, another LOA, was transferred into Defendant's Olathe, Kansas office after being removed from Defendant's Lawrence, Kansas office.

30. Ms. Seele is significantly younger than Plaintiff, and, upon information and belief, is approximately in her early 30's.

31. By the last quarter of 2017, the majority of the people working in the Olathe, Kansas office were significantly younger than Plaintiff.

32. Upon Ms. Seele's arrival in the Olathe, Kansas office, Plaintiff noticed a change in the office dynamic and noticed that she was being excluded.

33. In late 2017, Plaintiff spoke directly with her supervisor, Angie Bates, about this, and asked if there was some sort of issue.

34. Plaintiff specifically told Ms. Bates that she was concerned that her colleagues were shunning her due to the age gap, or because she had a hearing loss and sometimes would have to ask people to repeat themselves or would need to approach someone's desk in order to hear a work-related comment or request.

35. Ms. Bates told Plaintiff that everyone was 'just busy' and not to worry about it.

36. Ms. Bates did not make any efforts to accommodate Plaintiff's hearing loss nor did she suggest any changes in how Plaintiff went about her work in order to address her hearing loss.

37. On several occasions in early 2018, Plaintiff once again raised her concerns with Ms. Bates, specifically mentioning that she was concerned that she was being squeezed out of the loan production pipeline, and being ostracized by the rest of the office due to her age and her hearing loss.

38. Besides telling Plaintiff 'not to worry about it', Ms. Bates did nothing to address Plaintiff's concerns.

39. In approximately mid-2018, Angie Bates was promoted to the position of Market Leader for all of Defendant's Kansas and Kansas City metro operations and offices.

40. In this capacity, Ms. Bates was still Plaintiff's supervisor, but decreased her own loan production.

41. After Ms. Bates promotion, Plaintiff asked to be assigned new Loan Officers to assist in order to meet her production goals.

42. Despite Plaintiff's repeated requests to have more Loan Officers assigned to her, and her willingness to do the work, Plaintiff was not assigned Loan Officers in the same manner her younger counterparts were.

43. In October of 2018, Plaintiff specifically asked Angie Bates is she could have an annual review.

44. Ms. Bates refused to provide Plaintiff with an annual review stating that Plaintiff did not need one.

45. Plaintiff was refused an annual review despite Defendant's company policy, which required annual reviews.

46. After her request for an annual review, in approximately late October 2018, Ms. Bates asked Plaintiff if Plaintiff would mind transferring to the Overland Park, Kansas office.

47. Although the Overland Park office was twenty minutes farther from Plaintiff's home, she agreed to the transfer, as it was sold to her as a new opportunity for growth.

48. Almost immediately after being transferred to the Overland Park office, Plaintiff realized that there was much less loan traffic at the Overland Park office and realized that her transfer to Overland Park was not an opportunity for growth, but instead, an effective demotion.

49. Plaintiff also noticed that there was an echo in the office, and due to her hearing loss, the echo made it quite difficult for her to hear.

50. Plaintiff once again approached her supervisor, Angie Bates, and expressed her concerns about the Overland Park office, her concerns about age discrimination, and her continued concerns that her hearing loss was causing Loan Officers to not want to work with her.

51. Plaintiff specifically mentioned to Ms. Bates that she was concerned that some of her co-workers may be irritated by her hearing loss, and once again asked for Ms. Bates advice and assistance.

52. Ms. Bates suggested that Plaintiff try to get hearing aids as soon as possible. Plaintiff then contacted the Love Works fund; a fund Defendant created and manages that can provide temporary financial assistance for medical needs such as hearing aids.

53. Plaintiff spoke with Christy at Love Works.

54. Plaintiff explained to Christy in detail that she was concerned that she was being denied opportunities to work with Loan Officers because of her hearing loss.

55. Plaintiff also expressed her concerns to Christy about being the oldest person in the office, and her fears of losing her job.

56. Plaintiff filled out some paperwork that Christy from Love Works provided, and received a loan to cover the cost of the hearing aids.

57. By December 2018, Plaintiff received her hearing aids.

58. The hearing aids made Plaintiff's ability to hear Loan Officers from across the room much easier, and upon receiving them, she was hopeful that her work situation would improve.

59. However also in December of 2018, Plaintiff was informed that one of her Loan Officers, Tyler, was being assigned a new assistant.

60. Tyler began to work with a new assistant, Shawnee, even though Shawnee had not passed the text to become licensed as a loan originator.

61. Shawnee is significantly younger than Plaintiff. Upon information and belief, at the time of her hire by Defendant, Shawnee was in her mid-20s.

62. At the company Christmas party in 2018, Tyler said, right in front of Plaintiff, that he had hired his new loan assistant, Shawnee, based on her age and looks.

63. At the 2018 Christmas party, Tyler joked to a number of the other Loan officers regarding Shawneed, stating, '[w]hen she walked in the room, I just new I had to hire her. Just look at her.' The other Loan Officers erupted in laughter, and Plaintiff was standing right there.

64. Plaintiff understood Tyler's comment to indicate that he wanted an LOA that was young and attractive, and that he was no longer using Plaintiff as his LOA due to her age.

65. After the 2018 Christmas party, Plaintiff continued to express her concerns to her supervisor Angie Bates, specifically mentioning her concerns about age discrimination and discrimination due to her disability, hearing loss.

66. Ms. Bates refused to directly address Plaintiff's concerns.

67. By January of 2019, Plaintiff became so concerned about her job that she asked Ms. Bates 'why am I being slowly liquidated of my loan inventory'? Ms. Bates once again refused to respond to Plaintiff's inquiries.

68. In January of 2019, a new loan officer named Chad began working for Defendant.

8

69. Plaintiff was once again hopeful that her workload would pick up, and was enthusiastic about working with Chad.

70. Despite her enthusiasm, Plaintiff did not receive any loan assignments from Chad.

71. In February 2019, Plaintiff was copied on an e-mail congratulating Chad for submitting 10 (ten) loans in the past month. Plaintiff was shocked, as she had not received any loan assignments from Chad.

72. When Plaintiff confronted her supervisor, Ms. Bates, about this issue, Ms. Bates told her the loans had been assigned to Kristen, her younger counterpart, and that she would talk to Plaintiff later.

73. Plaintiff was never even given an opportunity to work with Chad, but instead, was systematically cut out of the opportunity to assist with new loans.

74. Shortly after confronting Ms. Bates once again about the discrimination, being set up for failure, and complete ostracization at the workplace, Ms. Bates informed Plaintiff that she was being 'let go' because she did not fit in and her production was low.

75. The allegations made by Angie Bates against Plaintiff regarding her 'low production' were inaccurate and unfair, as Plaintiff was not given an adequate opportunity to produce loans after being systematically cut off from all viable opportunities to work with Loan Officers.

76. As Plaintiff attempted to ask Angie Bates why she was not told earlier about performance concerns, why she was denied an annual review, and other questions, Ms. Bates cut off the conversation.

77. At all relevant times, Defendant failed to conduct an adequate investigation into Plaintiff's complaints about age discrimination and disability discrimination.

78. The reasons given by Defendant for Plaintiff's termination were pretext to cover up their unlawful and retaliatory motives.

79. Prior to her complaints, Plaintiff did not suffer the same level of ostracization at work as after her complaints.

80. Employees who did not suffer from a hearing loss were not set up for failure and terminated without a proper investigation like Plaintiff was.

81. Younger employees were not set up for failure and terminated like Plaintiff was.

82. Employees without medical issues or perceived or actual disabilities were not set up for failure or terminated like Plaintiff was.

83. Plaintiff received no progressive discipline, per company policy, and thus, Defendant did not follow its own policies in terminating Plaintiff.

84. As a result of her disability, Defendant terminated Plaintiff.

85. As a result of her age, Defendant terminated Plaintiff.

86. As a result of Plaintiff's good faith complaints of age and disability discrimination, Defendant retaliated against, and ultimately terminated Plaintiff.

87. Defendant regarded Plaintiff as being disabled and/or perceived Plaintiff to be disabled and/or Plaintiff has a record of being disabled.

88. Defendant knew or should have known of Plaintiff's diagnosis.

89. Defendant's conduct has caused Plaintiff degradation, humiliation, anxiety and emotional distress.

90. Defendant's conduct has caused Plaintiff lost wages and benefits.

91. At all times relevant herein, before and after, the individuals responsible for the acts alleged herein were agents, servants, and employees of Defendant and were at all times acting

within the scope and course of their agency and employment, or their actions were expressly authorized or ratified by Defendant. Therefore, Defendant is vicariously liable for the individuals' actions.

## COUNT I
### Americans with Disabilities Act – Disability Discrimination

92. Plaintiff incorporates by reference all other paragraphs in this Complaint and restates and re-alleges the same.

93. The Americans with Disabilities Act prohibits discrimination against a person who has a mental or physical impairment that substantially limits one or more major life activities, or who is regarded as having such an impairment, or who has a record of such an impairment, which with or without reasonable accommodation does not interfere with the individual's ability to perform the essential functions of the job in question.

94. Defendant discriminated against Plaintiff because she is actually disabled and/or because Defendant regarded her as disabled and/or Plaintiff has a record of being disabled.

95. Plaintiff was disabled for purposes of the ADA.

96. Plaintiff's disability substantially affects and/or has affected one or more of her major life activities.

97. Defendant knew Plaintiff was actually disabled, had a record of disability, and/or perceived and regarded Plaintiff as having a mental or physical impairment that substantially affects one or more of her major life activities.

98. Defendant discriminated against Plaintiff on the basis of her disability and/or perceived disability in ways including but not limited to: treating Plaintiff with hostility and less favorably than similarly situated, non-disabled employees, failing to accommodate the Plaintiff's

11

disability, unwarranted disciplinary actions and ultimately terminating Plaintiff's employment with Defendant.

99. The conduct and actions by the above-described perpetrators were performed on the basis of Plaintiff's disability and/or perceived disability and/or Plaintiff has a record of being disabled, and constituted disability discrimination that is prohibited by the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*

100. The reasons given by Defendant for the misconduct toward Plaintiff and her termination were pretext to cover up their unlawful and discriminatory motives.

101. Plaintiff suffered tangible adverse employment actions as a result of Defendant's hostile treatment of Plaintiff, all based on Plaintiff's disability and/or perceived disability and/or because Plaintiff has a record of being disabled.

102. As a result of Defendant's conduct, Plaintiff has incurred and will continue to incur lost wages, benefits, and other damages.

103. Defendant's conduct has caused Plaintiff emotional distress, including but not limited to sadness, degradation, humiliation, anger, and upset.

104. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

105. Defendant's treatment of Plaintiff was punitive in nature and was based upon Plaintiff's status as a person regarded as having a physical impairment that substantially limits one or more major life activities.

106. Supervisory and administrative level employees knew or should have known of the discrimination based on Plaintiff's disability and/or perceived disability and/or Plaintiff's record

of a disability, but they failed to appropriately address the problem and further failed to implement effective and appropriate procedures to stop the discrimination.

107. The actions and conduct set forth herein were outrageous and showed an evil motive, reckless indifference, or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter others from similar conduct.

108. At all times mentioned herein, the above referenced perpetrators were supervisors, managers, agents, servant, and employees of Defendant and were at all such time acting within the course and scope of their employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for punitive damages under the doctrine of respondeat superior.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of this Complaint, for a finding that she was subjected to unlawful discrimination prohibited by 42 U.S.C. § 12101, *et seq.*, for an award of back pay and front pay, compensatory and punitive damages, pre-judgment and post-judgment interest as provided by law, for her costs herein expended, for her reasonable attorneys' fees, and such other relief as this Court deems just and proper, including equitable relief.

### COUNT II
### Americans with Disabilities Act – Retaliation

109. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

110. Plaintiff's complaints and reports of disability discrimination to her immediate Supervisor, as well as to Defendant's "Love Works" fund, constituted protected activities.

111. As a result of Plaintiff's protected activities, Defendant subjected Plaintiff to adverse employment actions as alleged herein, including but not limited to subjecting Plaintiff to greater scrutiny, baseless claims of poor performance, ostracizing Plaintiff, setting her up for failure, and ultimately termination of her employment.

112. Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

113. At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

114. Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

115. Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment in her favor and against Defendants on Count II of her Complaint for a finding that he has been subjected to unlawful discrimination as prohibited by the Americans with Disabilities Act; for an award of compensatory and punitive damages; pre judgment and post judgment interest as provided by law; for her costs expended herein; reasonable attorneys' fees; and for such other and further relief as this Court deems just and proper.

### COUNT III
### Age Discrimination – ADEA

116. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

117. Plaintiff is 40 years old or older and was subjected to intentional discrimination by

Defendant because of her age.

118. Plaintiff was subjected to discrimination by Defendant in that she was ostracized at work, systematically denied opportunities to close loans, set up for failure, and ultimately summarily terminated, whereas younger workers were not terminated or treated in the same manner.

119. Plaintiff was subjected to discrimination by Defendant in that she was ultimately terminated based upon his age.

120. But for Plaintiff's age, Defendant would not have discriminated against her.

121. Defendant knew that its conduct was prohibited by The ADEA or Defendant showed reckless disregard about whether its conduct was prohibited by The ADEA.

122. As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other damages.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count III of his Complaint, for a finding that she has been subjected to unlawful age discrimination in violation of The ADEA, for an award of economic and liquidated damages, for her reasonable attorneys' fees, costs as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT IV
### ADEA – Retaliation

123. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

124. Plaintiff reported and opposed unlawful age discrimination in the workplace.

125. Plaintiff's complaints and reports of Defendants' age discrimination to Ms. Bates and to Christy at Love Works constituted protected activity.

126. Plaintiff's continued opposition to Defendants' discrimination against her constituted protected activity.

127. By reason of Plaintiff's complaints, Defendants retaliated against Plaintiff, including subjecting Plaintiff to greater scrutiny, ostracizing her, denying her work opportunities, systematically cutting her out of the loan pipeline, and terminating her employment.

128. The actions Defendants took against Plaintiff might well have persuaded a reasonable person in the same or similar circumstances of Plaintiff to not report or to not oppose workplace discrimination.

129. Defendants would not have taken material adverse actions against Plaintiff but for Plaintiff's act of opposing and reporting unlawful discrimination in the workplace.

130. Plaintiff's reports of, and opposition to, unlawful discrimination and in the workplace was a determining factor in Defendants' decision to subject Plaintiff to greater scrutiny, ostracizing her, denying her work opportunities, systematically cutting her out of the loan pipeline, and terminating her employment.

131. Defendants' unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

132. Defendants' actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendants to punish Defendants and to deter Defendants and others from like conduct.

WHEREFORE Plaintiff prays for judgment against Defendants on Count IV of her Complaint for a finding that she has been subjected to unlawful retaliation in violation of the Age Discrimination in Employment Act; for an award of back pay, including lost bonuses and

commissions, cost of living increase and other benefits including interest; for an award of compensatory and punitive damages; pre-judgment and post-judgment interest as provided by law; for her costs herein expensed; reasonable attorneys' fees; and for such other relief as this court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all counts of the Complaint.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates the United States District Court for the District of Kansas, located in Kansas City, Kansas as the place of trial.

**HOLMAN SCHIAVONE, LLC**

By: ___/S/ Ashley H. Atwell_____
Ashley H. Atwell-Soler, KS # 24047
Holman Schiavone, LLC
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Phone: 816.283.8738
Fax: 816.283.8739
aatwell@hslawllc.com